FOX *v.* BARRETT'S ESTATE.

1. Estates of Decedents—Witnesses—Privilege—Waiver.

Where the representative of a decedent, upon cross-examination, compels a survivor adversely interested to testify, in reference to a contract with decedent, to facts known equally to both, he thereby waives the benefit of the statute excluding such testimony, and throws open the subject inquired about to full explanation upon the redirect.

2. Same—Admissions.

The fact that the statement elicited from the adverse party upon such cross-examination is not a direct one as to what the contract was, but merely affirms what the witness has admitted it to be upon a former examination, will not alter the rule, the witness not being confined in his testimony on redirect to the facts brought out in the earlier proceeding.

3. Same—Claim for Services—Compromise—Evidence.

A witness called on behalf of an estate testified that he had had a talk with claimant with reference to negotiations between claimant and one of the heirs of the deceased, whereby claimant had agreed to take a certain amount in full of his claim, which was for services rendered. The court ruled out the testimony on the ground that it related to an attempted compromise, it appearing that the heir had no authority to bind the estate, but permitted testimony, as bearing upon the value of the services, that claimant had said that he would be satisfied with the amount claimed to have been agreed upon. *Held,* that the ruling was correct.

Error to Wayne; Aldrich, J., presiding. Submitted April 6, 1898. Decided May 18, 1898.

William H. Fox presented a claim against the estate of Eliza Barrett, deceased. The claim was disallowed by the commissioners, and claimant appealed to the circuit court. From a judgment for claimant, defendant brings error. Affirmed.

*Bacon & Palmer*, for appellant.

*James H. Pound*, for appellee.

HOOKER, J.   Two questions only require discussion in this case. .The claimant was allowed a sum against the estate of the intestate, and the defendant has brought the cause to this court.   The claim relates to money expended and services rendered for the intestate.   It was claimed by the defendant that the services were rendered under an agreement by which the claimant was to pay $2.50 per week and do.certain work for the deceased for his board. We think this was not conclusively shown, and that there was evidence to go to the jury in support of the claim. Upon the cross-examination, the claimant was asked if he had not stated upon a former examination that he was engaged to be married to the decedent, who was an elderly woman, and he said that he had.   He also testified, in answer to the questions of defendant's counsel, that he stated that, when he went to live with Mrs. Barrett, he was to pay $2.50 for his board, and was to do certain work for her in addition to that, viz., do the chores and look after the garden.   On redirect, he testified that this agreement related to a time when he was working (presumably at his avocation), and that it was not to include any of his services continuously.   This testimony was objected to as inadmissible under the statute excluding testimony as to matters equally within the knowledge of the deceased.

Counsel for the defendant saw fit to interrogate the claimant as to alleged admissions about the contract, and, by direct questions, compelled him to admit that he said under oath that he agreed to pay $2.50 a week for board, and do some work for the deceased, but apparently sought to preclude him from showing the full terms of the contract. In other words, they sought evidence out of his own mouth of so much of the contract as would benefit the estate, and attempted to exclude the things that would benefit the claimant.   The statute in question was designed to protect estates, by excluding the testimony upon the subject known equally to the claimant and the deceased party.   If, however, the representative of the deceased wishes, he may

compel the living party to testify; but in that case he cannot prevent such party from giving a full explanation of the subject inquired about. Can he avoid this by relying upon his admissions to prove the contract? In this case the defendant has not called the claimant as a witness, nor has he interrogated him about the terms of the contract. He has ingeniously avoided it by asking him, not what the contract was, but what he had admitted it to be upon another occasion. This was to all intents and purposes requiring the witness to testify upon the subject, for manifestly he might as well have said to the jury that those statements were true as to have said that he made them on a former trial, when under oath. It is clear that they went to the jury with all the force of direct statements about the contract. When it is sought to explain them, he is met with the objection that his testimony is excluded by the statute, and the argument that he has not testified to the contract, or been asked to do so, but merely what he has theretofore testified under oath to be the contract. It is admitted that upon such former trial the door was opened to redirect examination, if his testimony was called out by the adverse party; but it is urged that upon this trial his redirect must be confined to what was said upon the former trial by way of explanation of the fact, although he may not have made or been asked for an explanation before. Thus, the statute, which is designed as a shield for the protection of the estates of deceased persons, is made a sword in its hands.

The claimant had not attempted to give evidence about his relations with the deceased, or the subject-matter of the contract, presumably because it was not admissible under the statute. Had the counsel for the estate sought to cross-examine him upon these subjects, it would have been a waiver of the statute. It is contended, however, that they might show his admissions about the contract, and about his promise to marry the deceased. To do this by another witness might have been proper, but in such case they must have offered the testimony in defense, and

subject to the right of cross-examination. As it was, they sought to show it by cross-examining the claimant upon a subject foreign to his direct examination. This was not a proper cross-examination, because it related to matters which he had not attempted to testify about, and which the law did not permit him to relate without the consent of the opposite party. It could only become proper by opening the door to his testimony upon the subject, which the estate might do. Again, if, as counsel say in the record, they simply asked the claimant what he had testified on a former occasion for the purpose of contradicting—*i. e.*, impeaching—him, it was incompetent, for there was no occasion to lay a foundation for impeachment upon matter which he had not mentioned.

It is obvious that a statement tantamount to an admission relating to the subject-matter of the contract was obtained, whether it was expected or not, and there is nothing in the record to indicate that, upon this testimony, counsel did not claim that the claimant's right to compensation was limited to his board. In such a case the admission is no more nor less than the testimony of the party himself. It is, in effect, the calling of such party as a witness by and for the representative of the deceased party, who desires to prove the transaction by him; and why should it be said that he may have so much of such testimony as he wishes, without giving an opportunity for explanation of the subject, any more than where the party was sworn upon the trial? There would be little justice in so construing the statute as to permit counsel for the estate to prove a part of a transaction by the claimant's own testimony, and then close the mouth of the witness as to the remainder. That seems to be what was attempted in this case. The court correctly held that, when a subject is gone into under such circumstances, it may be explained fully by the witness on redirect examination; and we are of the opinion that the case before us was within the rule. *Smith's Appeal,* 52 Mich. 415.

A witness named Jahnke was called on behalf of the estate, and stated that he had a talk with claimant, who showed him an order from George Barrett during a conversation which he had with him. The record indicates that the conversation was with reference to negotiations between claimant and said George Barrett, who was one of the heirs of the deceased, wherein they executed a writing whereby it was agreed that claimant would be paid and receive $100 in full of his claim. It turned out that Barrett had no authority to bind the estate, and he was dead at the time of the trial. The court excluded the instrument and the testimony, upon the ground that it was an attempted compromise. At the same time, he offered to permit evidence of the claimant's statements as to the nature or value of his services, and permitted testimony that he said that he would be satisfied with $100. We think the ruling of the court was correct. See *Manistee National Bank* v. *Seymour*, 64 Mich. 70, and cases cited.

There are other questions raised by the record, but we think they do not require discussion.

The judgment is affirmed.

The other Justices concurred.