## DOWNS v. FOWLER.

1. MASTER AND SERVANT—PERSONAL INJURIES—WORKMEN'S COMPENSATION ACT—EVIDENCE—ADMISSIBILITY.

In an action for personal injuries by a servant against a master who had not elected to come under the workmen's compensation act (2 Comp. Laws 1915, § 5423 *et seq.*), on the ground that defendant had failed to provide a reasonably safe place to work, testimony of plaintiff, over objection, that he was as responsible as any one for the condition of the place where the injury was had, was admissible only as bearing on the liability of the master and not as tending to show contributory negligence of plaintiff; the defenses of contributory negligence and assumption of risk being barred by the statute.

2. SAME—INSURANCE—EVIDENCE.

In such action, the fact that the master was protected by casualty insurance, and that the insurer was the real party in interest, was inadmissible; said fact having no bearing on the question of defendant's negligence.

3. SAME—WILFUL NEGLIGENCE—SAFE PLACE.

The defense of wilful negligence being still available (section 5423, 2 Comp. Laws 1915), the court properly submitted to the jury the question as to whether plaintiff followed defendant's instructions in keeping the place free from grout, and such action was not open to the objection that it amounted to saying that defendant would not be compelled to furnish a safe place in which to work.

Error to Hillsdale; Chester, J. Submitted April 2, 1918. (Docket No. 17.) Decided June 3, 1918.

Case by Floyd W. Downs against Travis A. Fowler for personal injuries. Judgment for defendant. Plaintiff brings error. Affirmed.

*Merton Fitzpatrick,* for appellant.

*F. A. Lyon,* for appellee.

See notes in L. R. A. 1916A, 23; L. R. A. 1917D, 80.

KUHN, J. The plaintiff, on September 17, 1913, was a laborer in the employ of the defendant, who was a building contractor and at the time was engaged in the erection of a large building for the Western Reserve Condensed Milk Company in the city of Hillsdale. On that particular day, among other operations, he was constructing a large cement coal bin in this building. The forms for the walls of this bin had been completed some days before, and on the day in question, as on several days preceding, the plaintiff and other laborers were employed in carrying the mixture of sand, cement, gravel and water known as "grout," in wheelbarrows from the mixing machine up an incline to a platform at the top of the basement wall, from which it was poured into the forms. This incline was made by running two long timbers, 35 or 36 feet in length from the ground level to the top of a pile of ties built up in cob-pile fashion close to the basement wall, across which timbers heavy two-inch planks, about 11 feet in length, were nailed. The timbers were about five feet apart, so that the ends of the planks extended about three feet beyond them on either side. The elevation from the ground level at the foot of the incline to the top of the structure was, according to defendant's testimony, about 5 feet, while according to plaintiff's, it was nearer 7 feet. The mixing machine stood about 12 or 15 feet from the foot of this incline. There were 4 or 5 men wheeling the grout and two helpers. The latter would meet the wheelers as they came to the foot of the incline and hook an iron rod onto the front of the wheelbarrow and pull in front until the top of the grade was reached. There was another man at the top who helped dump the wheelbarrows into the forms. A wheelbarrow, when filled to capacity with grout, weighed about 150 pounds. Each man filled his own wheelbarrow and was not required to take on a greater

load than he could handle properly without spilling. On an average they were filled about two-thirds full. Occasionally some of the grout would slop out of the wheelbarrows onto the runway, making it wet and slippery in places and leaving a sprinkling of small pebbles which were apt to roll under the feet of those operating the wheelbarrows. The plaintiff's testimony is to the effect that on the day in question he was going up this incline with a loaded wheelbarrow, when the helper who was pulling in front slipped, and plaintiff just then stepped on a small stone which rolled under his foot, causing him to fall forward. He caught himself on the handles of the wheelbarrow before he struck the planking, but wrenched himself and felt a pain—a sort of stinging sensation, as he described it. He thought little of it, however, and continued wheeling grout until noon, and in the after-. noon was set to unloading a car of gravel stones. The pain continued to grow more severe and he noticed a lump forming. A fellow workman, upon examination, advised him to go home, as he probably had a rupture. He left work at about 2 o'clock and went to his physician the same afternoon, who informed him that he had a rupture in the left inguinal region and immediately fitted him with a truss. Since his injury, plaintiff has been unable to do heavy work, and his earning power has been reduced for that reason. It is conceded that the defendant had not complied with the requirements of the workmen's compensation law (2 Comp. Laws 1915, § 5423 *et seq.*). Plaintiff brought this action, basing it on the ground of negligence on the part of the defendant in failing to provide him with a reasonably safe place to work. The jury returned a verdict in favor of the defendant.

Most of the assignments of error relate to rulings of the court with relation to testimony concerning the extent of the injury and the resulting damages. As

the jury rendered a verdict of no cause of action, that is, that no negligence was shown on the part of the defendant, we need, in the consideration of this case, concern ourselves only with such assignments as relate to the question of liability. All others are immaterial.

While plaintiff was on the stand, the court permitted answers by him, over objection, to the following questions:

"Q. Did you spill any? (meaning grout)
"A. Yes, sir.
"Q. Did you spill as much as anybody?
"A. Yes, sir."

It is the claim of counsel for appellant that by these questions and answers it was sought to show that the plaintiff contributed to his injury, that is, that he was guilty of contributory negligence, and that, as the workmen's compensation law expressly excludes the defenses of contributory negligence and assumption of risk, it was error to admit this testimony. We are of the opinion, however, that the testimony was properly admitted as bearing upon the question of liability on the part of the defendant, it being the theory of the plaintiff that the place was made unsafe by the very fact that grout was allowed to spill and accumulate on the runway.

The trial court refused plaintiff's counsel the right to show that in this case the defendant was protected by insurance and that the real party in interest in defending this action was the insurance company. We think in this regard the ruling of the court was proper and that it would have been error to have permitted such a showing to be made. The question of whether or not the defendant carried insurance to protect him against liability of this kind, had no bearing upon the question of his negligence.

The court charged the jury with reference to wilful negligence, as follows:

"Upon the question of wilful negligence on the part of the plaintiff, you are instructed that if Mr. Fowler instructed this plaintiff to clean off this incline, removing therefrom the grout, pebbles and moisture, and plaintiff failed to follow these instructions, and his failure rendered the place not reasonably safe, and because of his failure to follow such instructions plaintiff was injured, then plaintiff cannot recover.

"If Mr. Fowler did not instruct the plaintiff to keep this runway free from pebbles and grouting and moisture, and you find it did become unsafe by reason of the slopping over of the grout, then plaintiff would not be guilty of wilful negligence.

"In this connection, you are instructed in this case that it is no defense that plaintiff's injury, if you find that he received one on the inclined runway, was caused by his own negligence unless you further find that such negligence was wilful. You are also instructed in this case that it is no defense that plaintiff's injury, if you find that he was injured, was caused by the negligence of a fellow servant or employee. Also you are instructed that the plaintiff did not assume the risks inherent in or incidental to the work in which he was engaged at the time of the claimed injury."

Fault is found with the submission of this question to the jury and that it is tantamount to saying that the defendant would not be compelled to furnish a safe place in which to work. Wilful negligence is still a defense which can be urged by the defendant. Section 1, pt. 1, Act No. 10, Extra Session 1912 (3 Comp. Laws 1915, § 5423). We cannot agree with the contention of plaintiff's counsel in this regard and see no error in submitting this question to the jury in the language used by the trial court. See *Freeman* v. *Railroad Co.*, 191 Mich. 529 (158 N. W. 204).

We have carefully read the entire charge of the court, and while some fault is found with the failure to give certain requests to charge, the crucial question of the negligence, namely, whether or not the defend-

ant furnished the plaintiff a reasonably safe place to work, was concisely and clearly submitted to the jury.

We are unable to find any reversible error in the record, and therefore affirm the judgment.

BIRD, MOORE, BROOKE, FELLOWS, and STONE, JJ., concurred with KUHN, J.

OSTRANDER, C. J.    I find no negligence of defendant proven and concur therefore in the result.

STEERE, J., concurred with OSTRANDER, C. J.